**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO.  5:91-CR-291 |
| | : | |
| Plaintiff, | : | JUDGE DAN A. POLSTER |
| | : | |
| vs. | : | **SECOND MOTION FOR SENTENCE** |
| | : | **REDUCTION UNDER 18 U.S.C.** |
| LARRY DUSENBERY, | : | **§ 3582(c)(1)(A)(i) FOR** |
| | : | **COMPASSIONATE RELEASE DUE TO** |
| Defendant. | : | **COVID-19 CIRCUMSTANCES** |

The defendant, Larry Dusenbery by and through counsel, previously filed a motion for compassionate release. Dkt. 671. This Court denied his motion, and said motion was affirmed by the Sixth Circuit Court of Appeals. Dkt. 679; Dkt. 686. Given the circumstances surrounding the COVID-19 pandemic and how the outbreak of the virus has affected the institution where Mr. Dusenbery is incarcerated, he raises new claims for this Court's consideration, and requests this Court grant him a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216)522-4856   Fax:(216)522-4321
E-mail: jeffrey_lazarus@fd.org

Attorney for Larry Dusenbery

1

## MEMORANDUM IN SUPPORT

### I.    Introduction

On July 10, 2019, Larry Dusenbery filed a motion for compassionate release. Dkt. 671. After extensive briefing, on November 18, 2019, this Court denied his motion. Dkt. 679. On July 24, 2020, the Sixth Circuit Court of Appeals affirmed this Court's order. Dkt. 686. This Court must be asking: well what has changed that I would now consider granting a motion I denied in November? The answer is the COVID-19 pandemic.

In 2019, Mr. Dusenbery sought a compassionate release solely due to his medical issues. This Court found his medical issues were not so significant to constitute extraordinary and compelling circumstances to justify a reduction. Dkt. 679. The COVID-19 pandemic has, however, had a profound effect on the Bureau of Prisons population. Mr. Dusenbery's medical conditions place him at high risk for severe illness if he were to contract COVID-19, which will be explained in great detail *infra*. Furthermore, the COVID-19 pandemic began in March of 2020, and for the first months of the pandemic, Mr. Dusenbery's institution, USP Thomson, was able to prevent a significant outbreak of the virus. Within the last few weeks, however, the number of inmates who have contracted COVID-19 has grown significantly and currently has 52 active cases. Given Mr. Dusenbery's high risk medical issues, he now asks this Court to find there are extraordinary and compelling circumstances to warrant a compassionate release.

### II.    Procedural History

On October 9, 1991, Larry Dean Dusenberry was named in a multi-defendant indictment charging him with a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. Dkt. 1. The indictment alleged that Mr. Dusenbery and others were engaged in the trafficking of powder cocaine totaling approximately 32 kilograms in violation of 21 U.S.C. § 841(a)(1) and § 846. Mr.

Dusenbery ultimately pled guilty to Count One of the indictment, and on July 27, 1992, the Honorable Sam Bell sentenced Mr. Dusenbery to 324 months of imprisonment. Dkt. 202. On appeal, the Sixth Circuit Court of Appeals found the district court failed to adequately inform Mr. Dusenbery of the charges against him, in violation of Criminal Rule 11, and vacated his conviction. *United States v. Dusenbery*, Sixth Circuit Case No. 92-3791 (6th Cir. October 4, 1993).

On remand, the government filed a notice of prior conviction, under 21 U.S.C. § 851, which enhanced the statutory penalties of the charges against Mr. Dusenbery. Dkt. 416. He went to trial and on June 27, 1994, Mr. Dusenbery was found guilty of Count One of the indictment. Dkt. 428. On July 28, 1994, the district court imposed a sentence of 480 months. Dkt. 443. The Sixth Circuit affirmed his conviction and sentence, and the Supreme Court declined to hear his case. Dkt. 486, Dkt. 507.

A number of post-conviction motions and appeals were later filed. However, on October 31, 2000, the Honorable Kathleen O'Malley granted Mr. Dusenbery's motion to vacate his conviction and sentence. *Dusenbery v. United States*, Case No. 00-CR-1781, Dkt. 17 (N.D. Ohio, October 31, 2000). Mr. Dusenbery was again convicted of the offense. In anticipation of sentencing, Mr. Dusenbery's attorney filed a sentencing memorandum on October 24, 2001. Dkt. 611. His sentencing memorandum detailed that Mr. Dusenbery, who had been in the Bureau of Prisons for ten years, had been suffering from some health issues. As further detailed *infra*, as early as 2001 Mr. Dusenbery was suffering from polycystic kidney disease, for which he was in pain and not being adequately treated in the prison. Dkt. 611, pp. 5-7.

On January 2, 2002, the district court imposed a sentence of life. Dkt. 625. The Judgment indicates a recommendation the "The Bureau of Prisons shall accommodate the defendant's illness

3

and provide adequate care." Dkt. 625, p. 2. His conviction and sentence were once again affirmed. Dkt. 647. Since that time Mr. Dusenbery has continued to seek review of his case, to no avail.

On April 4, 2019, Mr. Dusenbery filed a pro se motion for relief under the First Step Act of 2019. Dkt. 670. This Court appointed the undersigned to represent Mr. Dusenbery for said motion. On July 10, 2019, defense counsel filed a motion in support of a compassionate release. Dkt. 671. This Court stayed consideration of the motion, upon the government's request, to obtain more medical records from the Bureau of Prisons. Dkt. 675. The government submitted a number of Mr. Dusenbery's medical records to this Court under seal. Dkt. 678. On November 18, 2019, this Court denied Mr. Dusenbery's motion for compassionate release. Dkt. 679. Mr. Dusenbery appealed to the Sixth Circuit, and this Court's order was affirmed on July 24, 2020. Dkt. 686.

III.    **Mr. Dusenbery has fully exhausted his administrative remedies**

Shortly after the Sixth Circuit affirmed the denial of his compassionate release motion, Mr. Dusenbery made a request to the Warden of the institution for a compassionate release. A copy of that letter to the Warden is attached as Exhibit C, and dated July 30, 2020. In said request, Mr. Dusenbery details his health care issues and his concerns over the spread of COVID-19 in the institution. He also includes his release plan details. Ex. C, p. 2.

To date, Mr. Dusenbery has not received a response from the Warden. More than 30 days have passed with no response from the Warden, Mr. Dusenbery has exhausted his administrative remedies. The exhaustion requirement is satisfied by the passing of 30 days from date the inmate's request was received by the Warden regardless of whether the administrative appeals have concluded. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). This Court may now address the merits of his request for sentence reduction.

IV.     **Mr. Dusenbery is a medically-vulnerable inmate who suffers from multiple health issues that place him at high-risk for complications if he contracts COVID-19**

As of September 8, 2020, the new strain of coronavirus (COVID-19), has infected over 27,300,000 people globally, leading to 892.539 deaths worldwide.[1] Governor DeWine declared a State of Emergency on March 9, 2020,[2] and on March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[3] Governor DeWine issued a "stay at home" order to prevent further spread of the virus. As of September 8, 2020, there have been 124,514 confirmed cases of the virus in Ohio, 13,887 people have been hospitalized, 4,276 have died.[4] The COVID-19 pandemic is "clearly out of the ordinary, uncommon, or rare" as "COVID-19 is twice as contagious as the flu, and 20 times more deadly."[5] The virus is "highly infectious," and can be spread "easily and sustainably" from person-to-person.[6] The virus can live on plastic and steel

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 21, 2020), *at* *https://nyti.ms/2U4kmud* (updating daily).

[2] *https://ema.ohio.gov/Documents/pdfs/DeWine_Signs_Emergency_Order_Regarding_Coronavirus_Response_0309.pdf*

[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* *https://bit.ly/2W8dwpS*.

[4] *https://coronavirus.ohio.gov/wps/portal/gov/covid-19/*

[5] Governor Mike DeWine (@GovMikeDeWine), Twitter (Mar. 14, 2020, 2:19PM), *https://twitter.com/GovMikeDeWine/status/1238892579262992384?s=20*

[6] *See* Centers for Disease Control and Prevention, *How COVID-19 Spreads* (accessed Apr. 3, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html*

surfaces for up to 72 hours[7], and, powered by a single cough or sneeze, can be propelled in a gas cloud that extends up to 27 feet in length.[8]

The CDC has issued guidance that individuals at higher risk of contracting COVID-19 take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[9] The conditions in jails do not allow for an inmate to take the recommended preventive actions and create an ideal environment for the transmission of contagious disease.[10]  Inmates cycle in and out of jails from all over, and people who work in the facilities leave and return daily, without effective screening. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[11]

As of September 7, 2020, there are 1,845 active cases of COVID-19 among the BOP inmates, and 643 staff members; to date 118 BOP inmates have died as a result of COVID-19.[12]

---

[7] Neeltje van Doremalen et al., *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, NEW ENG. J. MED., 2 (2020), available at *https://doi.org/10.1056/NEJMc2004973* (accessed Apr 2, 2020).

[8] Lydia Bourouiba, *Turbulent Gas Clouds and Respiratory Pathogen Emissions: Potential Implications for Reducing Transmission of COVID-19*, JAMA  (2020), *https://jamanetwork.com/journals/jama/fullarticle/2763852*  (accessed Apr 2, 2020)

[9] *https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/asthma.html*

[10] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at *https://doi.org/10.1086/521910*

[11] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at https://bit.ly/2W9V6oS*.

[12] *https://www.bop.gov/coronavirus/* (updating daily)

The rates of rising COVID-19 infections in the BOP are significantly higher than the rest of the United States population and the rest of the world:



The BOP facility where Mr. Dusenbery is currently incarcerated, USP Thomson, is on total lockdown due to the pandemic and quarantine procedures. As of September 7, 2020, there are 52 active COVID-19 cases amongst the inmate population, and 12 staff members.[13] However, given the testing deficiencies, it cannot be said that this number is accurate. Several institutions have quickly been overrun with infections due to the BOP's inability to adequately address the necessary interventions. It should also be noted number of active COVID-19 cases at USP Thomson has only begun in recent weeks. The BOP has been keeping cumulative numbers on inmates who test positive; as of September 7, 2020, they have completed 827 tests, 3 inmates have been deemed to be recovered, there have been 54 total positive tests.[14] Since there are currently 52 active inmates, that means that all their positive tests except two have occurred in the recent weeks. Thus, the COVID-19 outbreak at USP Thomson has occurred recently.

---

[13] *See supra* Note 12.

[14] *Id.*

Much like many of the inmates who have died in the BOP from COVID-19, Mr. Dusenbery presents a number of health issues that place him at high risk. The Centers for Disease Control (CDC) has identified a number of factors that place a person at high-risk if they contract COVID-19. One of these is age, and being 62 years old, Mr. Dusenbery is at high risk by his age alone.[15] Several federal court have relied on a defendant's age in granting a compassionate release. *See United States v. Regas*, Case No. 91-CR-57, 2020 WL 2926457, at *3 (D. Nev. June 3, 2020) (granting compassionate release for 77-year-old at facility with no confirmed COVID-19 cases); *United States v. Ebbers*, 432 F. Supp. 3d 421, 431 (S.D.N.Y. 2020) (granting compassionate release for a  78-year-old man who had served 13 years in prison, and suffered from health issues); *United States v. Hansen*, Case No. 07-CR-520, 2020 WL 1703672 at *7 (E.D.N.Y. Apr. 8, 2020) ("Mr. Hansen is over 65 years old, has served more than 10 years of his sentence, and based on the court's review of Mr. Hansen's medical records, is experiencing a serious, age-related deterioration in his physical and mental health."); *United States v. Nazzal*, Case No. 10-CR-20392, 2020 WL 3077948 at *4 (E.D. Mich. June 10, 2020) ("Moreover, it is beyond dispute that the defendant's age places him at serious risk according to the CDC guidelines, and his risk is aggravated by other serious conditions including a history of heart disease, essential hypertension, type-2 diabetes, and asthma from which he evidently suffers daily and for which he takes medication."); *United States v. Saad*, Case No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020) (ordering compassionate release of 71 year old inmate who suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, back problems, a frozen thigh from an overdose of Coumadin given by prison officials, and who also had a history of heart surgery and knee replacement, and a recent diagnosis of kidney cancer).

---

[15] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html*

The CDC further provides medical conditions that place a person at high risk if they contract COVID-19.[16] As detailed in Mr. Dusenbery's previous motion for compassionate release, his health issues in the Bureau of Prisons are well documented as far back as 2001 when his 480-month sentence was vacated and he was given a life sentence. A copy of the sentencing memorandum is attached as Exhibit A, from 2011, in which his attorney detailed that he suffered from Polycystic Kidney disease, for which he was in constant pain and not receiving adequate care from the Bureau of Prisons. Ex. A, p. 5. A number of his family members had suffered from this disease, resulting in kidney failure and death, including his mother. Ex. A, p. 5.

Included with the 2001 sentencing memorandum were 41 pages of documents illustrating his health issues; the relevant portions of these records are attached as Exhibit B. A letter from Dr. Jay Wish to Judge O'Malley, dated October 4, 2001, was included confirming Mr. Dusenbery's Polycystic Kidney disease. Ex. B, pp. 1-2. Dr. Wish confirmed there were cysts in Mr. Dusenbery's kidneys and forewarned that he may experience kidney failure within five to ten years if not properly treated. Ex. B, p. 3. Additional documents dated 2000 and 2001, detail that Mr. Dusenbery had sought treatment in the prison for his kidney issues. Ex. B, pp. 4-5. Included are letters from Mr. Dusenbery detailing his ailments as well as his requests for treatment in the prison due to pain. Ex. B, pp. 6-17.

Counsel has recently obtained an updated version of Mr. Dusenbery's medical files, current through July 29, 2020, from the Bureau of Prisons. The records for just the last three years total 523 pages, and counsel is willing to provide the entirety of those files to the Court if needed.

---

[16] *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html*

However, for the sake of brevity, defense counsel now provides only the most relevant medical records as Exhibit D, pp. 1-7.

Mr. Dusenbery continues to suffer from polycystic kidney disease. Records as recent as July 22, 2020 detail that he still suffers kidney pain. Ex. D, p. 1. In fact, records from July 20, 2020 explain that he has Stage IV kidney disease in conjunction with his polycystic kidney disease. Ex. D, p. 2. For reference, Stage IV kidney disease is the second-worst status; Stage V is complete kidney failure. Stage IV means "this is the time to start talking with your nephrologist about how to prepare for kidney failure. Once your kidneys have failed, you will need to start dialysis or have a kidney transplant to live."[17] Records from July 14, 2020 explain that Mr. Dusenbery has "worsening kidney function." Ex. D, p. 3. On July 16, 2020, Mr. Dusenbery was taken out of the prison to a doctor who specializes in kidney functioning and treatment. His report confirms that Mr. Dusenbery is in Stage IV kidney disease and since April of 2020 his kidneys have decreased in function from 33% to 27%. Ex. D, pp. 4-5.

Mr. Dusenbery's kidney problems are severe and as indicated by the records are only getting worse. He has been struggling with this disease for nearly 20 years and it is just a matter of time before they completely fail. While his kidney problems may not, during "normal times," warrant a compassionate release by themselves, we are in a pandemic. The CDC has compiled a list of medical conditions that place a person at high risk of severe illness if they contract COVID-19, and chronic kidney disease is one such condition.[18] Thus, in addition to his age, Mr. Dusenbery has as second risk factor, and the consequences of him contracting COVID-19 could be fatal. Other federal courts have granted compassionate release to inmates who suffer from kidney problems,

---

[17]https://www.kidneyfund.org/kidney-disease/chronic-kidney-disease-ckd/stages-of-chronic-kidney-disease/

[18] *See supra* Note 16.

some with similar kidney conditions and some whose kidney issues were less severe than Mr. Dusenbery's. *See e.g., United States v. Howard*, 4:15-CR-18, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (defendant was 52 years old and suffering from COPD, type II diabetes, obesity, stage 3 kidney disease, edema and a diaphragmatic hernia); *United States v. McGraw*, 2019 WL 2059488, at *1-2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72 year-old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues); *United States v. Saad*, Case No. 16-CR-20197, 2020 WL 2251808, at *5 (E.D. Mich. May 5, 2020) (defendant was 71 years old and suffering from chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea and shingles); *United States v. Bertrand*, No. 3:00-CR-12, 2020 WL 2179387, at *1 (N.D. Fla. Apr. 29, 2020) ("Defendant states that he is 71 years old and shows that he suffers or suffered from multiple, serious health conditions, including prostate cancer, a pulmonary embolism, diabetes with two related eye surgeries, chronic kidney disease, asthma and hypertension."); *United States v. Spencer Harris*, Case No. 06-CR-30058, 2020 WL 3483559, at *3 (C.D. Ill. June 26, 2020) ("Mr. Harris has been diagnosed with chronic kidney disease and kidney failure, as well as obesity and hypertension."); *United States v. Champagne*, Case No. 4:97-CR-089, 2020 WL 3472911, at *5 (D.N.D. June 25, 2020) ("He has been diagnosed with chronic osteomyelitis, type 2 diabetes, hypertension, disease of the esophagus, and acute kidney failure. Individually, each is sufficiently serious to warrant compassionate release.")

Unfortunately, however, Mr. Dusenbery's health issues and COVID-19 risk factors do not end there. He also suffers from high blood pressure, also known as hypertension, which is also a risk factor for COVID-19.[19] The records show that throughout 2020, Mr. Dusenbery has high blood pressure numbers even though he takes medications to control this problem: July, 145/87;

---

[19] *See supra* Note 16.

April, 141/76; February, 178/103. Ex. D, pp. 6-8. As hypertension places inmates at high risk from COVID-19, a number of federal courts have granted compassionate release motions for inmates who suffered from high blood pressure.[20]

A full list of the current medical issues he suffers from are listed by the BOP medical records attached as Exhibit D, pp. 9-13. These records detail that Mr. Dusenbery had prostate cancer in 2012 for which he was treated with radiation. Ex. D, p. 9. A complete list of the medications he takes is also attached. Ex. D, pp. 14-17. Of note is that Mr. Dusenbery is prescribed Pregabalin, which is used to treat muscle and nerve pain (a generic form of Lyrica). Ex. D, p. 16. Pregabalin is an immunosuppressant, which means that while this medication aims to reduce his muscle and nerve pain, it also lowers his ability to fight infections. Taking medications that weaken the immune system has been identified as another risk factor for severe illness from COVID-19. *See supra* Note 16. Pregabalin has specifically been identified as a medication that can weaken the

---

[20] *United States v. Handy*, 3:10-CR-128, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Mattingly*, 6:15-CR-05, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez*, 1:18-CR-2846, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Gutman*, 1:19-CR-69, 2020 WL 2467435 (D. Md. May 13, 2020); *United States v. Sedge*, 1:16-CR-537, 2020 WL 2475071 (E.D. N.Y. May 13, 2020); *United States v. Barber*, 6:18-CR-446, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Rivernider*, 3:10-CR-222, 2020 WL 2393959 (D. Conn. May 12, 2020); *United States v. Ramirez*, 1:17-CR-10328, 2020 WL 2402858 (D. Mass. May 12, 2020); *United States v. Ullings*, 1:10-CR-406, 2020 WL 2394096 (N.D. Ga. May 12, 2020); *United States v. Valencia*, 1:15-CR-163, 2020 WL 2319323 (S.D. N.Y. May 11, 2020); *United States v. Foreman*, 3:19-CR-62, 2020 WL 2315908 (D. Conn. May 11, 2020); *United States v. Reddy*, 2:13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020); *United States v. Pena*, 1:15-CR-551, 2020 WL 2301199 (S.D. N.Y. May 8, 2020); *United States v. Connell*, 18-CR-281, 2020 WL 2315858 (N.D. Cal. May 8, 2020); *United States v. Vo*, 15-CR-310, 2020 WL 2300101 (N.D. Cal. May 7, 2020).

immune system and put a person at risk.[21] Other federal courts have granted compassionate release for inmates who are taking such immunosuppressant medications.[22]

Since the beginning of pandemic Mr. Dusenbery has developed tremendous anxiety and depression over the fear of contracting COVID-19. Given his past and current health issues, he is gravely afraid of what might happen to him if he contracts COVID-19. He is greatly concerned about the institution's inability to keep him separated from others, but further that if he does get sick, that the institution lacks the ability to properly meet his medical needs. He therefore requests this Court permit him to be released on home confinement. Given these circumstances, Mr. Dusenbery requests this Court grant him a compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A). These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence.

## V.      Legal Standards for Seeking Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)

Prior to 2018, a district court could only receive a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), known as a "compassionate release" upon a motion from the Warden of the prison where the defendant was being held. The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(l)(A) to allow district courts to modify sentences of imprisonment upon motion by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the

---

[21] *https://creakyjoints.org/living-with-arthritis/coronavirus/fibromyalgia-coronavirus-risk/*

[22] *United States v. Quintero*, 6:08-CR-6007, 2020 WL 2175171 (W.D. N.Y. May 6, 2020); *United States v. Peters*, 3:18-CR-188, 2020 WL 2092617 (D. Conn. May 1, 2020); *United States v. Brown*, 4:05-CR-227, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020); *United States v. Robinson*, 3:18-CR-597, 2020 WL 1982872 (N.D. Cal. Apr. 27, 2020); *United States v. Park*, 1:16-CR-473, 2020 WL 1970603 (S.D. N.Y. Apr. 24, 2020); *United States v. Edwards*, 6:17-CR-3, 2020 WL 1650406 (W.D. Va. Apr. 2, 2020); *United States v. Jepsen*, 3:19-CR-73, 2020 WL 1640232 (D. Conn. Apr. 1, 2020); *United States v. Campagna*, 16-CR-78, 2020 WL 1489829 (S.D. N.Y. Mar. 27, 2020).

Bureau of Prisons to bring a motion on the defendant's behalf or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 603(b), 132 Stat.5 194, 5239 (codified at 18 U.S.C.§ 3582(c)(l)(A)).

Section 3582(c)(1)(A)(i) authorizes the modification of a sentence of imprisonment if "extraordinary and compelling reasons warrant such reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," as set out in United States Sentencing Guideline § 1B1.13. This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction[.]" Pursuant to the requirement of 28 U.S.C. § 994(t), as authorized by 28 U.S.C. § 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria for a reduction in sentencing, which, as set forth in U.S.S.G. § 1B1.13 includes, in relevant part:

(1)(A)  extraordinary and compelling reasons warrant the reduction;

(2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)  the reduction is consistent with this policy statement.

Further, the application note, 1B1.13, Application Note 1(A) provided insight into what constitutes "extraordinary and compelling reasons," which include the defendant's medical condition, and further detailed as:

(ii)  The defendant is:

(I)  suffering from a serious physical or medical condition,

(II)  suffering from a serious functional or cognitive impairment, or

14

       (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Following the passage of the First Step Act of 2018, a number of other federal district courts have granted sentence reductions under § 3582(c)(1)(A).

      COVID-19 is a game-changer, which warrants consideration for a sentence reduction for Mr. Dusenbery. The plethora of cases listed above, in pages seven and eleven through thirteen, are all cases in which federal courts found the circumstances in the BOP due to COVID-19 and the inmate's own personal health issues constituted extraordinary and compelling reasons to grant a sentence reduction. Mr. Dusenbery presents a multitude of health issues and asks this Court to find his health condition is significant enough, and the risk posed to him by COVID-19 is significant enough, to warrant a reduction in sentence.

## VI.    Mr. Dusenbery is no longer a danger to society and his health condition warrants a reduction in light of the COVID-19 pandemic and the poor conditions in the BOP

      In consideration of his medical issues, the current COVID-19 outbreak at USP Thomson, and the fact that Mr. Dusenbery has spent the last 29 years in the Bureau of Prisons, a reduction of his sentence is warranted under 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Dusenbery recognizes the offense for which he was convicted and sentenced was very serious and warranted a significant sentence.

      A summary of the offense was detailed by Judge O'Malley's opinion denying Mr. Dusenbery's § 2255 petition, which is attached as Exhibit E. Dkt. 570; *see also United States v. Dusenbery*, Case No. 5:97-CV-2608 (N.D. Ohio, July 21, 1998). Pages 8 through 13 detail the facts surrounding the evidence from trial. Essentially between 1983 and 1990, Mr. Dusenbery was

involved in a cocaine trafficking operation, bringing powder cocaine to the Akron area from Miami, Florida. Ex. E, p. 8. The investigation a number of wiretaps and recordings of Mr. Dusenbery and his co-conspirators. At trial, many of the co-conspirators testified against Mr. Dusenbery. FBI experts determined that during the conspiracy, Mr. Dusenbery had distributed 32 kilograms of cocaine. Ex. E, p. 12.

There are no allegations that firearms or violence were a part of the offense. When originally sentenced in this case, Larry Dusenbery was in his early thirties, he is now a 62-year-old man with multiple and significant health issues. He is imprisoned at an institution where the COVID-19 virus is out of control, and is very concerned that he could suffer grave health issues if he contracts the virus. He has spent decades hoping and praying for the possibility to rejoin society, and if given one, he will take full advantage of the opportunity. His primary concern is to obtain the medical care he needs.

Mr. Dusenbery should not die in prison. Judge O'Malley's statements during sentencing indicate had Mr. Dusenbery been eligible for a sentence of less than life in prison, he may have received it. In sentencing Mr. Dusenbery in 2001, Judge O'Malley stated:

> one of the reasons the sentence was delayed so long in this case is that I did not want to have to make this decision as to whether it was life in prison or not if it wasn't absolutely necessary.  And the Government didn't want to have to argue that life in prison was mandated by the statute if not absolutely necessary.

Dkt. 641, Sentencing Tr., p. 53. Judge O'Malley, in reviewing the original sentencing order by Judge Bell, stated,

> I do want to incorporate a couple things into my finding here.  One is I read with great care Judge Bell's sentencing determinations.  Judge Bell had a lot of things to say about this Defendant's involvement in this conspiracy, the seriousness of the Defendant's offense, and the fact that he felt that a sentence in this case had to be long enough to assure that this <u>Defendant would never be released from prison at an age when he might possibly engage in any kind of additional drug trafficking.</u>  Judge Bell was very concerned about this Defendant's activities while incarcerated.

16

> And the Judge had some very serious concerns about any sentence that would be too short.  So Judge Bell's particular findings as to this particular Defendant are not dramatically at odds with the concerns underlying, or Congress's concerns underlying this mandatory life sentence; <u>though he did specifically say that he didn't think an actual life sentence was necessary.</u>

Dkt. 641, Sentencing Tr., p. 46 (emphasis added). Granting Mr. Dusenbery a compassionate release is consistent with these comments by Judge O'Malley's as well as those referencing Judge Bell's findings.

Mr. Dusenbery's offense, while serious, was not so serious to prevent consideration of any reduction. Furthermore, while his prior convictions did result in statutory enhancements to his sentence under 21 U.S.C. § 851, his criminal record is not so vast to prevent any reduction. In fact, district judges within the Northern District of Ohio have granted sentence reductions for inmates whose offense and criminal history is more serious than Mr. Dusenbery's. Chief Judge Patricia Gaughan recently granted a compassionate release motion for a defendant who had been deemed a career offender and was convicted of two counts of possession of a firearm in furtherance of drug trafficking crime (§ 924(c)). *See United States v. McClellan*, Case No. 1:92-CR-268, Dkt. 221 (N.D. Ohio, June 3, 2020). Judge Solomon Oliver reduced the sentence of an inmate convicted of "multiple counts of armed bank robbery and firearms charges" (§ 924(c)) for which he originally received a total sentence of 627 months. *United States v. Sparrow*, Case No. 5:98-CR-126, Dkt. 122 (N.D. Ohio, June 18, 2020).

Compassionate release grants from federal judges in other districts is further support. Of particular note is *United States v. Parker*, Case No. 2:98-CR-749, Dkt. 965 (N.D.Cal. May 21, 2020). Ralph Parker received a life sentence in 2000 for his role as the leader of a multi-defendant drug conspiracy that included several burglaries related to the drug conspiracy. *Id.* Due to his age (65 years old), degenerative joint disease, high blood pressure, and diabetes, the district court

17

granted him a compassionate release. *Id.* at PageID 2347. The district court detailed the seriousness of his offense, including the large amount of firearms, grenades, and ammunition that were found at his arrest, but found his rehabilitative efforts over the last 22 years no longer made him a risk of danger. *Id.* at PageID 2353, 2356. Other federal courts have issued similar holdings. *See e.g., United States v. Ledezma-Rodriguez*, Case No. 3:00-CR-71, Dkt. 218 (S.D. Iowa, July 14, 2020) (life sentence for drug trafficking granted a compassionate release following COVID-19); *United States v. Day*, Case No. 1:05-CR-460, Dkt. 259 (E.D.Va. July 23, 2020) (defendant had been serving life sentence since 2006 for a conspiracy involving over 100 kilograms of powder cocaine, due to defendant's obesity, hypertension, and asthma, he was granted a compassionate release); *United States v. Copeland*, Case No. 2:05-CR-135, Dkt. 662 (D.S.C. March 24, 2020) (granting a sentence reduction for defendant who had been found to be an Armed Career Criminal and sentenced to life in prison due to his prior drug convictions); *United States v. Williams*, Case No. 1:99-CR-120, Dkt. 566 (D. Colo. June 15, 2020) (finding although defendant has a "penchant for violent crimes using firearms" when originally sentenced in 2002 to 293 months and had 30 months remaining on his sentence, his health issues warranted a sentence reduction); *United States v. Almontes*, Case No. 3:05-CR-58, 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020) (granting compassionate release of defendant with drug and Section 924(c) conviction, who had been deemed a career offender based on prior assault and robbery convictions); *United States v. Williams*, Case No. 3:04-CR-95, Dkt. 91 (N.D. Fla. Apr. 1, 2020) (finding compassionate release appropriate for defendant convicted of armed bank robbery and brandishing a firearm during a crime of violence who had a prior criminal history including "six prior convictions for armed bank robbery and three prior convictions for bank robbery"); *United States v. Scott*, Case No. 7:98-CR-79, Dkt. 317 (E.D.N.C. Feb. 4, 2020) (granting compassionate release of defendant serving a

lengthy sentence for Hobbs Act robbery and multiple counts of using and carrying a sawed-off shotgun and other firearms during and in relation to crimes of violence); *United States v. Mitchell*, Case No. 4:09-CR-26 (N.D. Fla. Feb. 3, 2020) (granting compassionate release of defendant who pled guilty to possessing a firearm in furtherance of drug distribution offense and was sentenced as an armed career criminal). He asks this Court to consider these cases in determining whether a sentence reduction is warranted under 18 U.S.C. § 3582(c)(1)(A)(i).

Thus, while Mr. Dusenbery's offense is concerning and he was sentenced to life in prison and has been in prison for the last 29 years, he is no longer a danger to society. Given his health issues and the circumstances of the pandemic in the BOP, this Court should grant him a reduction.

### A.       The amount of drugs at issue should not prevent consideration of the motion

The government may claim Mr. Dusenbery remains a danger to society because of the amount of drugs in the conspiracy. Dkt. 926, PageID 420-21. His offense involved 32 kilograms of cocaine, which today would yield a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (2019) (between 15 and 50 kilograms of cocaine). This Court can consider the changes to Mr. Dusenbery's sentencing guidelines under current law in considering his request for a reduction, just as other courts have done in compassionate release motions. *See United States v. Flakes*, Case No. 1:14-CR-214, Dkt. 1142 (N.D. Ohio, July 20, 2020) (Judge Gwin granting compassionate release, in part, because the defendant's sentencing guideline range had been lowered since his original sentencing); *United States v. Wahid*, Case No. 1:14-CR-214, Dkt. 1151 (N.D. Ohio August 14, 2020) (same).

Further, there are several defendants in this district who engaged in similar conduct involving significantly large of amounts of cocaine who were previously sentenced to lengthy sentences who have received reductions. One notable large-scale drug trafficker to compare is

Craig Houston. *United States v. Houston*, Case No. 3:93-CR-746. Mr. Houston received a life sentence from this Court in 1993 for engaging in a conspiracy that dealt with at least 25 kilograms of cocaine, most of which was converted to crack cocaine. *See United States v. Houston*, Case No. 3:93-CR-746, Dkt, 614, Government Response (N.D. Ohio). While Mr. Houston was sentenced to life in prison, following amendments to the Sentencing Guidelines, Judge Carr reduced Mr. Houston's sentence to 360 months. *Id.* at Dkt. 617, PageID 603-09. Mr. Houston was released from the Bureau of Prisons on July 19, 2019. His co-defendant, Josephus Petaway, also received a sentence of life in prison; Judge Carr also reduced his sentence to 360 months following the First Step Act; Mr. Petaway was also released from the Bureau of Prisons in 2019.

Another case of note is that of Richard Stone and Virgil Stone. *See United States v. Stone*, Case No. 1:96-CR-403 (N.D. Ohio). In that case, these two brothers were convicted of a drug conspiracy involving 492 kilograms of cocaine base (crack) as well as several hundreds of kilograms of powder cocaine. *Id.* at Dkt. 534, PageID 558. Judge Matia sentenced Richard to life in prison and Virgil received a sentence of 480 months. Following the First Step Act, Richard's life sentence was reduced, by Judge Nugent, to 360 months and he is due to be released from prison in 2022. Virgil also received a reduction and was released from the Bureau of Prisons in 2018. *See also United States v. Day*, Case No. 1:05-CR-460, Dkt. 259 (E.D.Va. July 23, 2020) (defendant had been serving life sentence since 2006 for a conspiracy involving over 100 kilograms of powder cocaine, due to defendant's obesity, hypertension, and asthma, he was granted a compassionate release).

These similarly-situated defendants are detailed to point out that large-scale cocaine traffickers from the 1990s have received reductions following changes in the law and have been

released or will soon be released. Mr. Dusenbery asks for similar consideration from this Court as his case parallels these cases.

**B.      Changes to Mr. Dusenbery's statutory range since his original sentence**

Mr. Dusenbery was originally sentenced in 1992 to a term of 324 months – 27 years of imprisonment. Dkt. 202. Had he not appealed his conviction, Mr. Dusenbery would have already been released. However, he did appeal, prevailing on a Rule 11 error by the district court. On remand, the government enhanced the statutory penalties under 21 U.S.C. § 851. Dkt. 416. This ultimately resulted in a sentence of 480 months of imprisonment. Dkt. 443. With accumulation of good-time credits, Mr. Dusenbery would likely be released under this sentence within the next three years. Mr. Dusenbery, however, sought relief, and received a new trial from Judge O'Malley. *Dusenbery v. United States*, Case No. 00-CR-1781, Dkt. 17 (N.D. Ohio, October 31, 2000). He was convicted again and received a life sentence. Dkt. 625.

Under current law, however, Mr. Dusenbery would not receive a mandatory life sentence. On January 2, 2002, Judge O'Malley imposed a mandatory life sentence upon Mr. Dusenbery for his conviction under 21 U.S.C. § 846. Dkt. 625, pp. 1-2. A mandatory life sentence was imposed only as a result of the government's filing of an enhancement notice under 21 U.S.C. § 851. At the time of his sentencing, Mr. Dusenbery's offense carried a ten-year mandatory sentence, but the § 851 enhancement for his two prior convictions, increased his statutory mandatory minimum to life.

This statutory range has been altered by the First Step Act, passed in December of 2018. Section 401(a)(2) of the First Step Act, 132 Stat. 5194, 5220. The First Step Act lowered the mandatory minimum penalties for drug conspiracies with two prior convictions. Following the First Step Act, a defendant convicted under 21 U.S.C. § 846, with two prior serious drug felonies, would not be subject to mandatory life, but instead be subject a mandatory minimum of 25 years.

21 U.S.C. § 841(b)(1)(A) (2019).

Mr. Dusenbery is not asking for retroactive application of these changes to the law and does not seek to apply these statutory changes to his current sentence. Instead, Mr. Dusenbery merely asks this Court to consider these changes to the law in evaluating this motion. Judges within the Northern District of Ohio have granted compassionate release motions based on the statutory changes to a defendant's sentence since their original sentencing.[23] Other federal courts across the country have made similar holdings.[24] The fact that he would likely not receive the same sentence today is a valid consideration, especially in conjunction with Mr. Dusenbery's personal health issues and the COVID-19 pandemic that is greatly affecting our nation's prisons. The fact that he would likely not receive the same sentence today is a valid consideration, especially in conjunction with Mr. Dusenbery's personal health issues and the COVID-19 pandemic that is greatly affecting

---

[23] Chief Judge Patricia Gaughan recently granted a compassionate release motion for a defendant serving a 35-year sentence who had been deemed a career offender and was convicted of two counts of possession of a firearm in furtherance of drug trafficking crime (§ 924(c)), which would not qualify under current law. *See United States v. McClellan*, Case No. 1:92-CR-268, Dkt. 221 (N.D. Ohio, June 3, 2020). Judge Solomon Oliver reduced the sentence of an inmate convicted of "multiple counts of armed bank robbery and firearms charges" (§ 924(c)) for which he originally received a total sentence of 627 months, but would not receive today. *United States v. Sparrow*, Case No. 5:98-CR-126, Dkt. 122 (N.D. Ohio, June 18, 2020); In *United States v. Wise*, Case No. 5:98-CR-138, Dkt. 112 (N.D. Ohio, June 25, 2020), Judge Gwin reduced a defendant's 610-month sentence for six bank robberies, which included multiple § 924(c) convictions which would not receive the same sentence today.

[24] *See United States v. Maumau*, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020) (granting a compassionate release, and reducing defendant's 55-year sentence to time served as defendant would not receive the same sentence due to recent changes in law under 18 U.S.C. § 924(c)); *United States v. Young*. 2020 WL 1047815 (M.D.Tenn. March 4, 2020) (finding extraordinary and compelling circumstances in defendant's health issues and the disparity between his sentence and the sentence he would receive under current law); *United States v. Urkevich*, 2019 WL 6037391, *2 (D.Neb. November 14, 2019) (granting reduction because of the § 924(c) sentence stacking, as defendant's 848-month sentence would be 368 months today); *United States v. Brown*, 411 F. Supp. 3d 446, 453 (S.D. Iowa 2019) ("a district court assessing a compassionate release motion may [ ] consider the resulting sentencing disparity when assessing if there are "extraordinary and compelling reasons" supporting release.").

our nation's prisons. In looking at the totality of these issues, there exists extraordinary and compelling reason to grant a compassionate release and permit Mr. Dusenbery to serve the remainder of his sentence on home confinement.

### C.    Mr. Dusenbery's Rehabilitative Efforts

This Court should also consider Mr. Dusenbery's post-offense rehabilitative efforts in determining whether a reduction is warranted. Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), a Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." Attached as Exhibit F is a list of the education courses Mr. Dusenbery has taken during his incarceration. As of April of 2019, he has taken 23 different education courses in a variety of topics, including business-related classes, career development, office and computer skills, and Spanish education. There is also no record of any disciplinary infractions while in the Bureau of Prisons.

### D.    Letters of support of Mr. Dusenbery's release plan

Additionally, Mr. Dusenbery asks this Court to consider the two letters attached, Exhibits G. First is a letter from Attorney James R. Wooley. Attorney Wooley was formerly one of the Assistant United States Attorneys who prosecuted Mr. Dusenbery's original case. Attorney Wooley is now in private practice with the law firm of Jones Day. Attorney Wooley has authored a letter in support of Mr. Dusenbery's release. While Attorney Wooley believes Mr. Dusenbery committed a serious offense, he also maintains that a 28-year sentence is sufficient in this case, especially given Mr. Dusenbery's health issues (written before the COVID-19 pandemic). Ex. G, p. 1. Attached is a letter from Attorney Angelo Lonardo, a long-time criminal defense attorney in

the Northern District of Ohio. Ex. G, p. 2. Attorney Lonardo represented Mr. Dusenbery at his re-sentencing hearings before Judge O'Malley. Attorney Lonardo details some insight into Mr. Dusenbery's intellect and aptitude towards his case and the complex legal issues presented. He is in full support of Mr. Dusenbery receiving a compassionate release from the Bureau of Prisons, and indicates he would even consider hiring Mr. Dusenbery as a legal assistant upon his release. Ex. G, p. 2. Mr. Dusenbery asks this Court to consider these letters in evaluating the motion.

If granted a release, Mr. Dusenbery would live with his long-time friend, Bill Syslo, who lives in the Cuyahoga Falls area. Mr. Syslo full contact information was detailed in Mr. Dusenbery's request to the Warden. Ex. C, p. 2. Mr. Dusenbery has been incarcerated for such a long time that all his family members have passed away. He has few friends that he has remained in touch with since his incarceration; Mr. Syslo is one of the few friends he has left. If granted a reduction, he would live in Mr. Syslo's home for only as long as needed. Mr. Syslo, who works full-time installing HVAC systems, lives very close to a kidney dialysis and treatment clinic. Mr. Syslo would assist Mr. Dusenbery in making appointments with this clinic and getting to and from the clinic for his appointments. When Mr. Dusenbery develops some stability, he intends on finding his own residence in the area.

In determination of all this, Mr. Dusenbery requests this Court grant him a reduction in his sentence and a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

**VII.    Conclusion**

For the foregoing reasons, Mr. Dusenbery respectfully requests that the Court grant a reduction in his sentence, due to the extraordinary and compelling circumstances, under 18 U.S.C. § 3582(c)(1)(A)(i).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216)522-4856   Fax:(216)522-4321
E-mail: jeffrey_lazarus@fd.org

Attorney for Larry Dusenbery