**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CASE NO. 5:91 CR 291** |
| ) | |
| **Plaintiff,** ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | <u>**OPINION AND ORDER**</u> |
| ) | |
| **LARRY DUSENBERY,** ) | |
| ) | |
| **Defendant.** ) | |

Before the Court is Defendant Larry Dusenbery's Second Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(I) for Compassionate Release, etc. **Doc #: 687** ("Second Motion"). The Court has reviewed the Second Motion, the Government's Response, Doc #: 690, Dusenbery's Reply, Doc #: 691, the Supplement, Doc #: 692, and the entire record. For the following reasons, the Court **GRANTS** the Second Motion.

**I.    Background**

This is a long and storied criminal case that began nearly 30 years ago when Dusenbery was 33 years old. Three judges adjudicated various issues – first, District Judge Sam Bell (now deceased), then District Judge Kathleen O'Malley (now Federal Circuit judge), and now me.

In 1991, a 27-count indictment was filed charging Larry Dean Dusenbery with one count of operating a continuing criminal enterprise ("CCE"), one count of conspiracy to distribute 32 kilograms of cocaine hydrochloride, and 8 counts of using a communication facility to facilitate drug-trafficking. At the time of the offense, Dusenbery was operating the conspiracy while incarcerated in federal prison for drug trafficking. On the day of trial, Dusenbery pled guilty to CCE in exchange for the Government's dismissal of the other counts. The Court denied

Dusenbery's subsequent motion to withdraw his guilty plea, after which Judge Bell sentenced Dusenbery to 324 months in prison, followed by 5 years of supervised release. Doc #: 202. On direct appeal, the Sixth Circuit vacated the CCE conviction, concluding that the district court should have allowed Dusenbery to withdraw his guilty plea. *United States v. Dusenbery*, 7 F.3d 235 (6th Cir. 1993).

On remand, all charges were reinstated and the Government filed a 21 U.S.C. § 851 sentencing enhancement based on prior felony convictions. Doc #: 416. Dusenbery was tried and found guilty of both the CCE and conspiracy counts, the communication counts having been dismissed prior to trial. Doc #: 428, 429. Judge Bell merged the CCE and drug conspiracy counts and sentenced Dusenbery to 480 months in prison, followed by two years of supervised release. Doc ##: 442, 443. The Sixth Circuit affirmed the convictions and sentence. *United States v. Dusenbery*, No. 94-3804, 1996 WL 306517 (6th Cir. Jun. 6, 1996). On July 16, 1997, this case was reassigned to Judge O'Malley. Doc #: 521. Judge O'Malley later denied Dusenbery's motion to vacate his sentence under 28 U.S.C.§ 2255, a ruling affirmed by the Sixth Circuit. *Dusenbery v. USA*, No. 98-4153, 1999 WL 993973 (6th Cir. Oct. 21, 1999).

On July 20, 2000, the Sixth Circuit authorized a second or successive § 2255 motion based on *Richardson v. United States*, 526 U.S. 813 (1999). In *Richardson*, the Supreme Court held, in a CCE case, that a jury must agree unanimously not only that the defendant committed some continuing series of violations, but on the specific violations committed. Doc #: 596. Judge O'Malley granted Dusenbery's motion, vacated and reinstated the CCE charge and scheduled it for trial. She then scheduled a resentencing hearing on the conspiracy conviction. Doc #: 605. On July 26, 2001, Judge O'Malley appointed Attorney Angelo Lonardo to represent Dusenbery for the resentencing hearing. Doc #: 604.

Following failed plea negotiations, Judge O'Malley sentenced Dusenbery to a mandatory prison term of life without parole on the conspiracy charge based on the Government's § 851 sentence enhancements for two prior felony drug convictions. Doc ##: 622, 625. The Government chose not to retry Dusenbery on the CCE charge.

### a.  First Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)

On July 10, 2019, prior to the COVID-19 pandemic, Dusenbery filed a Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(I). Doc #: 671 ("First Motion"). Therein, Dusenbery asked the Court to reduce his sentence to time served based on his polycystic kidney disease, an inherited condition that leads to kidney failure and resulted in his mother's death in prison; high blood pressure; and associated conditions such as shortness of breath, chest and abdominal pain, and headaches. He argued that these conditions, while not terminal, cause him significant discomfort and diminish his ability to care for himself in prison. Dusenbery also cited his age (then-61), time served (then-28 years), and the unusual circumstances surrounding his case including having served more time than his original 324-month sentence. The Court appointed the Federal Public Defender to represent Dusenbery, and counsel presented a request for early release to the warden of FCI Allenwood, where Dusenbery resides. After the warden denied the request, the Court issued an Opinion and Order denying release. Doc #: 679.

The Court determined, among other things, that Dusenbery failed to explain how his medical conditions impaired his ability to provide self care within the correctional facility, or that the BOP was less than diligent about providing his care. Doc #: 687. Consequently, the Court concluded, Dusenbery failed to establish that his medical conditions constituted extraordinary and compelling reason warranting a sentence reduction. The Court also found that

Dusenbery's age failed to meet the threshold (65) for a sentence reduction under U.S.S.G. § 1B1.13.

### b. Second Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)

One year later, on July 30, 2020, in the midst of the COVID-19 pandemic, Dusenbery filed the Second Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(I). Doc #: 687. ("Second Motion").  Dusenbery now asks the Court to grant compassionate release based on his progressive and debilitating medical issues that render him at high risk of severe consequences should he contract COVID-19 in prison–where there is a severe outbreak of the virus.  He also asks the Court to grant him early release because, if sentenced today for the same crime under the First Step Act, he would be released after serving 25 years.  That time passed 3 years ago.

## II. Law and Analysis

Before granting a sentence modification under 18 U.S.C. § 3852(c)(1)(A)(I), a court must find: (1) extraordinary and compelling reasons warrant a sentence modification, (2) the defendant is not a danger to the safety of any other person or the community, and (3) the reduction is appropriate considering the 18 U.S.C. § 3553(a) sentencing factors.  *United States v. Hardin*, No. 1:19 CR 240, 2020 U.S. Dist. LEXIS 90855, at *5 (N.D. Ohio Apr. 7, 2020).

### A. Extraordinary and Compelling Reasons

Extraordinary and compelling reasons for sentence modification exist under four categories set forth at U.S.S.G. § 1B1.13, Application Note 1.  Here, the only relevant category is the fourth category, labeled "other reasons."  *Hardin*, 2020 U.S. Dist. LEXIS 90855, at *3.  To determine whether other reasons warrant sentence modification, the Court considers whether:

(1) the defendant is at high risk of having grave complications should he contract COVID-19, and (2) the prison where the defendant resides has a severe COVID-19 outbreak.

Dusenbery, who is 62 years old, has served nearly 30 years of a life sentence at USP Thomson. Updated medical records show his kidney disease has progressed to Stage IV. Stage V, the final stage, results in kidney failure necessitating dialysis or a kidney transplant. In just the past 6 months, Dusenbery's kidney function has decreased from 33% to 27 %. Dusenbery also suffers high blood pressure which his medications do not ameliorate. And he is prescribed Pregabalin to treat muscle and nerve pain. Pregabalin is an immunosuppressant medication that lowers the ability to fight infections, such as the coronavirus. Finally, Dusenbery's age, along with his medical conditions, raise his risk of catching and suffering severe consequences should he contract the virus in prison.

Chronic kidney disease and immune-weakening medications have been identified by the Centers for Disease Control and Prevention as two conditions that unquestionably place Dusenbery at high risk of severe consequences, should he contract COVID-19.[1] Dusenbery's kidney disease has progressed to Stage IV and will only worsen–the only question is when. As we are heading into flu-and-colds season, Dusenbery's ability to avoid these infections *and* COVID-19 in a correctional facility will be extremely difficult.

The Government points out that, in the Court's previous decision denying Dusenbery a sentence reduction, Dusenbery failed to identify a qualifying medical justification under U.S.S.G. 1B1.13, and his kidney disease did not warrant early release because Dusenbery could

---

[1] People of any age with underlying Medical Conditions CENTERS FOR DISEASE CONTROL AND PREVENTION, httpa://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

-5-

not identify a single instance in which the BOP had failed to address his condition. Doc #: 690 at 10. That decision was *before* the pandemic, which changed everything including the way district courts analyze compassionate-release motions.

> As one court explained, the COVID-19 pandemic has altered the lens through which courts must consider compassionate leave requests. The virus presents a danger to senior inmates within correctional institutions. There is little ability to maintain social distance in confinement, and it is difficult – if not impossible – to practice other necessary behaviors, such as frequent hand washing to reduce the spread of the virus.
> Courts in other districts have recognized the unprecedented nature of the massive health challenge that COVID-19 presents and ordered compassionate release as appropriate [even] for defendants serving a life sentence.

*United States v. Curington*, Case No. 1:12 CR 20115, Doc #: 645, at 2 (S.D. Fla. Jul. 7, 2020). Dusenbery no longer has to show a qualifying medical justification such as a terminal condition, or that the BOP is unable to care for him. He only has to show that he faces an elevated risk of grave illness should he acquire the virus in prison.

Furthermore, the Court finds that USP Thomson, where Dusenbery resides, is in the midst of a severe COVID-19 outbreak. On September 8, 2020, when Dusenbery filed the Second Motion, there were 52 active cases at USP Thomson. See Doc #: 687 at 2. On November 10, 2020, 124 inmates and 8 staff members tested positive for the virus.[2] On November 11, 2020, 131 inmates tested positive for the virus. On November 12, 2020, 159 inmates tested positive for the virus. Today, 179 inmates tested positive for the virus. These numbers show that USP Thomson not only has a severe outbreak of COVID-19, but a rampant, and apparently uncontrollable, one.

---

[2]*COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (checked daily from Nov. 9, 2020 through Nov. 13, 2020).

The Court concludes that Dusenbery has presented extraordinary and compelling reasons justifying compassionate release. But the analysis does not end here.

### B. Danger to the Safety of any Other Person or the Community

For a court to grant compassionate release, it must also find the defendant is not a danger to the safety of any other person or the community. 18 U.S.C. § 3142(g). Section 3142(g) calls for courts to consider (1) the nature of the circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Id.

Here, the Government contends that Dusenbery's conviction, which resulted from running a drug trafficking ring from his prison cell, along with two prior drug convictions and possession of firearms, shows he is still a danger to the community. Thus, the Government concludes, Dusenbery has "earned" his life sentence and, apparently, will always be a danger to the community. Doc #: 690 at 20. The Court disagrees.

Dusenbery committed his crime nearly 30 years ago, when he was in his early 30s. He is now 62 years old, has a panoply of medical issues that compromise his health generally, and two conditions that place him squarely at serious risk of acquiring the virus and suffering grave consequences, should he contract it. While Dusenbery was sentenced to life in prison, he was not sentenced to a premature death in prison.

Additionally, the court may consider a prisoner's post-offense developments which provide the most up-to-date picture of a defendant's history and characteristics and sheds light on the likelihood that a defendant will engage in future criminal conduct. *Pepper v. United*

-7-

*States*, 562 U.S. 476, 490-93 (2011). The record shows that Dusenbery has taken full advantage of educational classes while in custody. He has taken 23 different courses on a variety of topics such as business-related classes, career development, office and computer skills, and Spanish. See Doc #: 687-6. It's also noteworthy that Dusenbery has no record of disciplinary infractions in nearly 30 years.

The Court finds that Dusenbery has carried his burden to show that he is no longer a danger to others or the community based on his advanced age, his swiftly deteriorating health, and his efforts to rehabilitate himself.

### C. The 18 U.S.C. § 3553(a) Sentencing Factors[3]

Among the sentencing factors a court must consider when determining whether to grant a reduced sentence is the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment for it, to promote respect for the law, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(2)(A), 3553(a)(6).

It is undisputed that if Dusenbery were sentenced today, he would be sentenced to 25 years in custody. That is 2 years shorter than his initial sentence of 324 months, or 27 years. In either case, Dusenbery would have been released 2 to 3 years ago. While the change in law is not retroactive, the undersigned finds that a sentencing disparity, along with additional factors, may justify compassionate release in certain cases. *United States v. Howell*, No. 4:14-CR-298, 2020 Dist. LEXIS 189101 at *6 (N.D. Ohio Oct. 13, 2020) (Polster, J.).

---

[3]Due to the overlap between the factors the Court must address in analyzing a defendant's danger to society and many of the 3553(a) sentencing factors, the Court need not address them in this section. See 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(B)-(D).

Everyone involved in this case agrees that Dusenbery's crime was particularly nefarious and deserving of a lengthy sentence, including Dusenbery. Everyone but the Government agrees that a life sentence under these circumstances is unreasonably long, including the sentencing judges,[4] Congress, and then-Assistant U.S. Attorney James R. Wooley who prosecuted Dusenbery.[5] In June 2019, prior to the Second Motion and the pandemic, Attorney Wooley submitted a letter supporting Dusenbery's release.

> It has been recently brought to my attention that Mr. Dusenbery, now 61 years old, is experiencing significant health issues. I believe, but am not certain, he suffers from the same disease that ultimately led to the death of his mother, Mary Dusenbery, many years ago while she, too, was serving a federal sentence. Mr. Dusenbery's offense was serious, but I believed at the time he was sentenced – and believe even more strongly now – that a sentence of 28 years is much more than sufficient to comply with the purposes of sentencing set forth in the United States Code. I also have no concerns for the safety of the community if he were to be released given his health and his age.

Doc #: 687-7 at 1.

---

[4] Judge O'Malley's statements during resentencing suggest that, had Dusenbery been eligible for a sentence of less than life in prison, he may have received it:

> I do want to incorporate a couple things into my finding here. One is I read with great care Judge Bell's sentencing determinations. Judge Bell had a lot of things to say about this Defendant's involvement in this conspiracy, the seriousness of the Defendant's offense, and the fact that he felt that a sentence in this case had to be long enough to assure that this Defendant would never be released from prison at an age when he might possibly engage in any kind of additional drug trafficking. Judge Bell was very concerned about this Defendant's activities while incarcerated. And the Judge had some very serious concerns about any sentence that would be too short. So Judge Bell's particular findings as to this particular Defendant are not dramatically at odds with the concerns underlying, or Congress' concerns underlying, this mandatory life sentence, *though he did specifically say that he didn't think an actual life sentence was necessary*.

Doc #: 641, Sentencing Tr. at 46 (emphasis added).

[5] James Wooley is currently a partner at the law firm of Jones Day in Cleveland.

Given the general agreement of everyone but the Government that Dusenbery has spent sufficient time for his offense under these particular circumstances seems gratuitously punitive.

The Court finds that the sentencing factors favor Dusenbery's release.

**D.     Dusenbery's Plan for Release**

If granted release, Dusenbery will reside with his long time friend, Bill Syslo, who lives in Cuyahoga Falls, works full-time installing HVAC systems, and is one of Dusenbery's friends who is still alive.  All Dusenbery's family members passed away during his incarceration.  Mr. Syslo lives very close to a kidney dialysis and treatment clinic, and states he would assist Dusenbery in making appointments and getting to and from the clinic.[6]  Once Dusenbery develops some stability, he intends to find his own residence in the area.

It is worth noting that in July 2019, prior to the Second Motion and the pandemic, Attorney Angelo Lonardo submitted a letter supporting Dusenbery's release:

> I was also most impressed with Mr. Dusenbery's intellect and his ability to comprehend difficult legal concepts embraced in applicable case law authority on the issue of sentencing and the applicable law for enhancements and departures from the sentencing guidelines concerning the facts of his particular case.  In fact, I commented to my colleagues at the time that I was so impressed with Mr. Dusenbery's ability to understand and research points of law that I would seriously consider hiring Mr. Dusenbery to assist in legal research when he was released from his period of incarceration.

Doc #: 687-7 at 2.  The Court finds Dusenbery's plan for release  satisfactory.

**III.    Conclusion**

Requiring Dusenbery to sit in a correctional facility with an outbreak of COVID-19 the BOP is unable to control puts Dusenbery at very high risk of potentially fatal complications,

---

[6]Mr. Syslo's name and contact information have been provided to the Warden.

-10-

should he contract it.  Because Dusenbery has shown extraordinary and compelling reasons justifying a reduced sentence, he is no longer a danger to the community, the sentencing factors favor release, and he has a satisfactory release plan, the Court hereby **GRANTS** Defendant Larry Dusenbery's Second Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(I). **Doc #: 687**.

The Court hereby **DIRECTS** the BOP to move Dusenbery into a segregated cell so that he can quarantine for 14 days before his release.

**IT IS SO ORDERED.**

  /s/ Dan A. Polster    November 13, 2020
**Dan Aaron Polster**
**United States District Judge**